UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 14-303 (DWF/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Lee Antoine Howell, | |
| Defendant. | |

Lee Antoine Howell, Defendant, Pro Se.

Katharine T. Buzicky, United States Attorney's Office, counsel for the Government.

**INTRODUCTION**

This matter is before the Court on Defendant Lee Antoine Howell's ("Howell") *pro se* motions to reduce his sentence, primarily in light of the COVID-19 pandemic.[1] (Doc. Nos. 678, 679, 709 (collectively, "Motion").) Howell also filed a motion for appointment of counsel.[2] (Doc. No. 710.) The United States of America (the

---

[1] In addition to the COVID-19 pandemic, Howell seeks a reduction in sentence pursuant to the United States Guideline Amendment 782. (Doc. Nos. 679, 709.) Amendment 782 became effective November 1, 2014 and applies retroactively to reduce most drug quantity base offense levels by two levels. *See United States v. Thomas,* 775 F.3d 982, 982 (8th Cir.2014). Because Howell was sentenced in 2016, Amendment 782 does not apply.

[2] The Court respectfully denies Howell's request for appointment of counsel. "[T]here is no general right to counsel in post-conviction habeas proceedings for criminal defendants." *United States v. Craycraft,* 167 F.3d 451, 455 (8th Cir. 1999); *Pollard v. Delo,* 28 F.3d 887, 888 (8th Cir. 1994).

"Government") opposes Howell's Motion. (Doc. No. 712.) For the reasons discussed below, the Court respectfully denies Howell's Motion.[3]

## BACKGROUND

On June 16, 2015, Howell pled guilty to one count of Conspiracy to Distribute Heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Doc. No. 309.) On March 17, 2016, this Court sentenced him to 132 months' imprisonment, to be followed by a 5-year term of supervised release on each count, also to run currently. (Doc. No. 471.)

Howell is currently incarcerated at Oxford FCI in Oxford, WI with an anticipated release date of January 2, 2025.[4] Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited December 27, 2021). Oxford FCI is at a Level 3 institutional operational level, meaning the facility has made intense modifications to mitigate the spread of COVID-19. Federal Bureau of Prisons, BOP COVID-19 Operational Levels, *https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp* (last visited December 27, 2021). Oxford FCI reports no active COVID-19 cases among its inmates or staff, and 552 inmates and 92 staff who have recovered from the virus. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited

---

[3] Howell's response to the Government's opposition was due December 8, 2021. (Doc. No. 717.) Howell did not respond.

[4] At the time Howell filed his first motions, he was serving his sentence at USP Hazelton in West Virginia. (*See* Doc. No. 678 at 3.)

December 27, 2021). To date, the Bureau of Prisons ("BOP") has performed 1077 tests for COVID-19 at Oxford FCI with 578 of them positive for the virus. *Id.* Moreover, the BOP has fully inoculated 115 staff and 655 inmates at the facility against COVID-19.[5] *Id.*

Howell, who is 40 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he suffers from high blood pressure, a heart murmur, a traumatic brain injury, and continued headaches and chest paints resulting from a previous COVID-19 infection.[6] (Doc. No. 678 at 1-3, 15-16; *see also* Doc. No. 713 ("Medical Records").) Howell also asserts that he is at peril of contracting COVID-19 because prisons are a high-risk environment, keeping him in prison is akin to a death sentence which the Court did not contemplate at his

---

[5]   The inmate population at Oxford FCI is 1085. Federal Bureau of Prisons, Oxford FCI, *https://www.bop.gov/locations/institutions/oxf/* (last visited December 27, 2021).

[6]   Howell previously contracted the virus in January 2021. (Medical Records at 48.) His Medical Records also reflect that while Howell suffers from hypertension, he informed medical staff in late July 2021 that he had stopped taking his medication and did not want to take it anymore. (Medical Records at 13.) At that time, his blood pressure was 124/86. (*Id.*) Howell's Medical Records also indicate that he suffers from an unspecified heartbeat abnormality, listed by his physician as "very mild grade 1." (*Id.* at 29.) In June 2021, Howell reported chest pain. (*Id.* at 68.) An EKG reported no concerning results; Howell was advised that his chest pain was likely caused by costochondritis, inflammation of the cartilage connecting the rib to the breastbone. (*Id.* at 70.) According to his Presentence Report ("PSR"), Howell suffered a traumatic brain injury in 1994. (Doc. No. 423 ¶ 104.)

Howell's Medical Records reflect that he declined a Moderna COVID-19 vaccine in October 2021 because he had already received two doses of the Pfizer-BioNTech COVID-19 vaccine. (Medical Records at 16, 54.) His Medical Records do not reflect that he received any vaccine. (*See generally* Medical Records.)

3

sentencing, and that release is appropriate because he has been successfully rehabilitated.[7] (*Id.* at 1-3, 11-15, 17-23.) Howell also states that release is appropriate because the primary and secondary caregivers for his children are in poor health. (*Id.* at 3.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[8]

---

[7]   Howell expresses great remorse for his offense conduct. (Doc. No. 678 at 18-21.) He also states that he is strongly committed to rehabilitation and is eager to make his mother and children proud. (*Id.*) The Court commends Howell for his commitment to rehabilitation and firmly believes that maintaining this effort will achieve the results he seeks.

[8]   While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See, e.g.*, *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker,* 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098, 1110-11 (6th Cir. 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir.

Family circumstances considered "extraordinary and compelling" include: (1) the death or incapacitation of the caregiver of the defendant's minor child or minor children; and (2) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.*, cmt. n.1((C).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

---

2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise greater discretion, the Court would still find that Howell fails to present an extraordinary and compelling reason to warrant release.

the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[9] *Id.*

The record reflects that Howell requested compassionate release from the warden at his facility in January 2021. (Doc. No. 715.) His request was denied the same month. (Doc. No. 716.) Thus, the Court finds that Howell's Motion is ripe for review.

After a careful review of Howell's Motion and other documentation, including his Medical Records, the Court finds that his circumstances are insufficiently extraordinary and compelling to meet the demanding standard for compassionate release. Specifically, the Court finds that neither Howell's family circumstances nor medical conditions, alone or in combination with his generalized fear about the danger of COVID-19 in a prison setting, constitutes an extraordinary and compelling reason to warrant compassionate release.

Although the Court commends Howell for his concern over the well-being of his children and their caregivers, the Court finds insufficient support to conclude that release is appropriate under the Statement. Specifically, Howell provides no documentation that any caregiver is incapacitated such that they are unable to provide care for his children or that he is the only other person able to provide care. *See* Statement, cmt. n.1((C).

---

[9] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

The Court also cannot conclude that Howell suffers from any medical condition that necessitates release. While the Court recognizes that hypertension is a medical condition that increases a person's risk of severe illness from COVID-19, it appears that Howell's hypertension is under control—so much so that he decided to discontinue taking prescribed medication.[10] *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited December 27, 2021). The Court finds no indication that Howell suffers from any medical condition, alone or in combination with the presence of COVID-19 at Oxford FCI, that has diminished or will diminish his ability to provide self-care while in prison.

The Court also finds that any risk that Howell will be infected with COVID-19 is largely mitigated by the fact that the BOP is actively vaccinating inmates and staff, including over 60% of the inmates at Oxford FCI. "Extensive testing and monitoring have shown that these vaccines are safe and effective." Centers for Disease Control and

---

[10]   The Court cannot conclude that compassionate release is appropriate on the basis of hypertension when Howell himself has selected not to mitigate his risk of illness by declining to take prescribed medication. (Medical Records at 13.) Moreover, the record reflects that even without the medication, his blood pressure is 124/86. (*Id.* at 13.)

The Centers for Disease and Control does not recognize Howell's other medical conditions as risk factors for severe illness from COVID-19. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited December 27, 2021). While it is truly unfortunate that Howell previously contracted COVID-19, prior infection does not increase his risk for severe illness. (*Id.*)

Prevention Benefits of Getting a COVID-19 Vaccine, *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html* (last visited December 27, 2021).

According to the CDC, the Pfizer-BioNTech COVID vaccine that Howell claims he received is highly effective, preventing 95% of infections in clinical trials. *See* Centers for Disease Control and Prevention, Information about the Pfizer-BioNTech COVID-19 Vaccine, *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html* (last visited December 27, 2021). To the extent Howell remains concerned about contracting COVID-19 after receiving the vaccine, the Court finds this fear speculative and declines to grant release based on a generalized fear of reinfection. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection).

The Court also notes that there are no active cases of COVID-19 at Oxford FCI. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited December 27, 2021). Further, the facility continues to employ measures to mitigate the spread of COVID-19.[11] Federal Bureau of Prisons, BOP COVID-19

---

[11] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective

Operational Levels, *https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp* (last visited December 27, 2021). It is also promising that the BOP has successfully administered over 275,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited December 27, 2021). Sadly, despite the vaccine rollout, some level of continued spread remains a possibility. In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Howell did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that he is not a danger to the safety of any other person or to the community and because the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against it. Specifically, the

---

operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited December 27, 2021). At Oxford FCI, because it is a Level 3 institutional operational level, these measures include facial coverings for inmates and staff regardless of vaccination status, social distancing in all areas, and required health checks before entering the facility. Federal Bureau of Prisons, BOP COVID-19 Operational Levels, *https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp* (last visited December 27, 2021). Other mitigation steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits. *Id.*

The BOP is also exercising greater authority to designate inmates for home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited December 27, 2021). Since March 2020, the BOP has transferred nearly 36,088 inmates to home confinement. *Id.*

Court cannot overlook Howell's offense conduct and criminal history to now conclude that release is appropriate when he has served just 60% of his sentence.[12] (*See, e.g.*, PSR ¶¶ 63-94.) The Court recognizes the hardship that COVID-19 has imposed on inmates and credits Howell for his commitment to rehabilitation; however, the Court finds that such a significant reduction in sentence would not reflect the seriousness of Howell's conviction, promote respect for the law, or provide a just punishment.[13] *See* 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, the Court finds that Howell fails to present an extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because it cannot conclude that he no longer poses a risk to the safety of the community and because the § 3553(a) factors weigh against it.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Antoine Lee Howell's *pro se* motions to reduce sentence (Doc. Nos. [678], [679]), [709]) are respectfully **DENIED**; and

---

[12] Howell has served approximately 80 months of his 132-month sentence.

[13] While the Court cannot conclude that release is appropriate at this time, the Court strongly believes that Howell's continued commitment to rehabilitation will position himself to be the best version of himself and that he can make a positive impact on those around him before and after he is released.

2. Defendant Antoine Lee Howell's *pro se* motion for appointment of counsel (Doc. No. [710]) is respectfully **DENIED**.

Dated: January 4, 2022                    s/Donovan W. Frank
                                                                    DONOVAN W. FRANK
                                                                    United States District Judge